[Civ. No. 25301. Second Dist., Div. One. Sept. 21, 1961.]

THE CITY OF LOS ANGELES, Appellant, v. CALIFORNIA MOTOR TRANSPORT COMPANY, LTD. (a Corporation), Respondent.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, and Robert C. Summers, Deputy City Attorney, for Appellant.

Eisner & Titchell and Haskell Titchell for Respondent.

WOOD, P. J.—This is an action to recover municipal license taxes for engaging in the business of transporting property by motor vehicles. Defendant California Motor Transport Company, Ltd., by cross-complaint, sought to recover the amount of license taxes which it had paid to plaintiff. The court found that the section of the Los Angeles Municipal Code under which the taxes were assessed (§ 21.159) is unconstitutional as applied to defendant's operations in that the measure of the tax as provided therein is unreasonable, arbitrary, and discriminatory. Judgment was in favor of the defendants[1] on the complaint; and for cross-complainant on the cross-complaint. Plaintiff appeals from the judgment in favor of California Motor Transport Company, Ltd., and contends that the measure of the tax is not unreasonable, arbitrary, or discriminatory.

The portion of section 21.159 of the Los Angeles Municipal Code under which the taxes were assessed provided as follows:

"(b) *Fee Imposed.* Every person whose business, in whole or in part, is that of operator of any motor vehicle for the transportation of property for hire or reward, and who in the course of that business uses the public streets and highways

---

[1]California Motor Express Company, Ltd., was also a defendant. Plaintiff does not appeal from the judgment in favor of that defendant.

of this city for the purpose of such operation, shall pay a license fee for each year, or fractional part thereof, of such operation, the amount of which shall be determined as provided in this section.

"(c) *Computation of Fee.*

1. For each vehicle, other than a tractor, or a trailer or semi-trailer, used to receive or discharge, pick up or deliver property within this city, the annual fee shall be as follows, where the unladen weight thereof is:

4000 lbs. or less .........................$ 4.00
Over 4000 lbs. and not more
 than 8000 lbs. ......................... 8.00
Over 8000 lbs. ........................... 10.00

2. For each trailer or semi-trailer so used, where the unladen weight thereof is:

1000 lbs. or less ..........................$2.00
Over 1000 lbs. and not more
 than 3000 lbs. ......................... 4.00
Over 3000 lbs. ........................... 6.00

3. For each tractor which is used to haul one or more trailers or semi-trailers not permanently affixed thereto ...............................$10.00

"(g) *Exemptions and Exceptions.* No fee hereunder shall be required for the operation of any motor vehicle or equipment along the streets of this city if such operation is merely occasional and incidental to a business conducted elsewhere; provided, however, that no operation shall be deemed merely occasional if trips or hauls are made beginning or ending at points within this city, upon an average, more than once a week in any quarter, and a business shall be deemed to be conducted within this city if an office or agency is maintained here or if transportation business is solicited here."

Defendant California Motor Transport Company, Ltd., is a corporation organized under the laws of the State of California, and it maintains its principal office for the transaction of business in San Francisco. It is duly licensed as a highway common carrier by the Public Utilities Commission, and it is engaged in business throughout California. It owns a substantial number of vehicles, including trucks, trailers and tractors or power units, and a substantial number of its vehicles and units are used from time to time in various localities throughout the state. Particular units which are customarily known

and called "line haul units" are not used over any specific route to the exclusion of any other route, but any specific vehicle or unit may be used in any given area at any particular time. There are no specific vehicles or units assigned to the Los Angeles area. Certain vehicles or units may be used in Los Angeles frequently, others may be used in Los Angeles infrequently, and others are not used here.

Prior to July 1, 1957, defendant filed tax returns pursuant to the provisions of section 21.159 of the Los Angeles Municipal Code, which returns were based upon the average number of vehicles and units used in connection with its business in the Los Angeles area, and defendant paid the tax based upon such average number of vehicles.

An audit by the city of defendant's records was made for the quarter of the year, April 1, 1957, to June 30, 1957. The audit listed every vehicle and unit which was used in Los Angeles during that period of time irrespective of whether the unit or vehicle was used in the area once or more than once. No attempt was made to determine the number of times each individual unit was used in the Los Angeles area. The difference between this total figure and the average number of units used in the area which was reported by defendant was determined and was used as a factor in determining deficiencies for the years involved. Plaintiff does not dispute this is method it used in arriving at the deficiencies. The various units and vehicles used are interchangeable, they are comparable in size and capacity, and none are special-purpose vehicles designed solely for use in Los Angeles. Defendant could have conducted all the business conducted by it in the calendar quarter of the audit with the average number of vehicles reported if it had assigned those vehicles exclusively for use in the Los Angeles area. During the audit period, 91 separate tractors, 123 different trucks, and 376 different trailers were used in Los Angeles at least once. The average number of vehicles used in Los Angeles during the period on any given day was 87 trailers, 107 trucks and 36 tractors. The number of vehicles used in Los Angeles on any specific day did not vary from the average number used in the area by more than 10 per cent.

During the years 1957 through 1959 inclusive, the amount of license taxes paid to the city by defendant, upon behalf of itself and its local affiliate, was $5,386. Of the total amount

paid, the amount charged on the books of the company to defendant was as follows:

| | |
|---|---|
| 1957 | $552.00 |
| 1958 | 552.00 |
| 1959 | 682.00 |

Defendant's cross-complaint for a refund was limited to those sums, and judgment in the total of said sums, $1,786 (plus interest) was in its favor.

The provisions of the section of the Los Angeles Municipal Code under which plaintiff seeks to recover herein are similar, with respect to measurement of the tax, to the provisions of the section of that code under which plaintiff sought to recover in the cases of *City of Los Angeles* v. *Carson,* 181 Cal.App.2d 540 [5 Cal.Rptr. 356], and *City of Los Angeles* v. *Drake, ante,* p. 744 [16 Cal.Rptr. 103]; and the provisions of the section of the municipal code under which plaintiff seeks to recover herein are similar, with respect to measurement of the tax, to the provisions of the ordinance of the City of Monterey referred to in *Security Truck Line* v. *City of Monterey,* 117 Cal.App.2d 441 [256 P.2d 366, 257 P.2d 755].

In the *Carson* and *Drake* cases the section of the municipal code involved therein imposed a business license tax based upon the number of buses used in the transportation of persons in the city of Los Angeles. In the *Monterey* case the section of the ordinance involved therein imposed a business license tax based upon the number of trucks used in hauling fish in Monterey. In the present case the section of the municipal code involved herein imposed a tax based upon the number of vehicles used in the transportation of property in the city of Los Angeles.

In the *Carson* and *Drake* cases, the defendants' places of business were in cities outside the city of Los Angeles. In those cases the defendants were engaged in the business of operating bus lines and in the business of operating charter buses, and they used the same buses in the operations of both businesses. They also used the same buses in charter bus trips which were made into the city of Los Angeles and which were made outside the city.

In the *Monterey* case, plaintiff (which successfully sought to have the ordinance declared unconstitutional as to it) is a licensed highway carrier, and its principal place of business is outside the city of Monterey. Its sole business in Monterey was the delivery of fish therein.

In the *Carson* case, the *Drake* case, and the *Monterey* case, it was held that the "measure of the tax . . . has no reasonable connection with [the] taxable event" or the quantum of business carried on in the municipality. In the *Carson* and *Drake* cases it was also held that the measure of the tax was discriminatory and void as to the defendants therein. In the *Monterey* case it was also held that the measure of the tax was arbitrary and discriminatory as to the plaintiff therein.

 In the present case, defendant's principal place of business is in San Francisco, and it is engaged in the business of transporting property throughout California. The vehicles used in its business in the city of Los Angeles are also used in its business throughout the state. No specific buses are assigned for use exclusively in the city. The taxable event, as in the *Carson* and *Drake* cases, is the doing of business in the city of Los Angeles. (The taxable event in the *Monterey* case was the doing of business in the city of Monterey.) Under the circumstances here, as in the cases cited above, "the measure of the tax set forth in the ordinance [that is, the number of vehicles used] has no reasonable connection with the taxable event" or the quantum of business carried on in the municipality. Section 21.159 of the Los Angeles Municipal Code, as applied to defendant, is arbitrary and discriminatory.

 Appellant (plaintiff) contends that the court erred in rendering judgment for defendant on its cross-complaint. It argues that if section 21.159 of the Los Angeles Municipal Code is unconstitutional as to defendant, defendant is not entitled to a refund of the taxes paid without proof that the amount which it paid as taxes was in excess of the amount which would be payable by it under the provisions of section 21.190 of the code, and that there was no proof thereof. Appellant states: "That among the points presented by appellant in the trial court was the proposition that if section 21.159 could not constitutionally be applied to respondent's [defendant's] activities during the years in question, then such activities must fall within the catch-all provisions of Section 21.190." Plaintiff quotes subdivision (a) of section 21.190 of the code. That section provides: "(a) Every person engaged in any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically licensed by other provisions of this Article, shall pay a license fee in the sum of $12.00 per calendar year or fractional part

thereof for the first $12,000 or less of gross receipts, and in addition thereto, the sum of $1.00 per year for each additional $1,000 or fractional part thereof, of gross receipts in excess of $12,000.''

It appears that the case was submitted to the trial court on a written "Statement of Facts." The statement was amended by stipulation. Appellant did not, in its answer to the cross-complaint, or in the statement of facts or amendment thereto, raise the question as to asserted liability of defendant for license taxes under section 21.159 of the Los Angeles Municipal Code. Under such circumstances, the court did not err in not considering that question in determining the liability of the city for a refund of the taxes paid by defendant; and that question is not properly before this court.

The judgment is affirmed.

Lillie, J., concurred.

A petition for a rehearing was denied October 16, 1961, and appellant's petition for a hearing by the Supreme Court was denied November 15, 1961.